UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOBBY L. DAVIDSON, | : |
| Plaintiff, | : CIVIL ACTION NO.<br>: 3-06-cv-861 (JCH) |
| vs. | : |
| | : FEBRUARY 12, 2008 |
| PATRICIA TESLA, TOWN OF STRATFORD,<br>AND MICHAEL A. IMBRO, POLICE CHIEF<br>OF THE TOWN OF STRATFORD | : |
| Defendants. | : |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 26)**

Plaintiff, Bobby L. Davidson, brings this Complaint against the defendants, Officer Patricia Tesla, the Town of Stratford, and Michael A. Imbro in his official capacity as the Police Chief of the Town of Stratford (collectively "defendants"), alleging violation of his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution pursuant to 18 U.S.C. § 1983, Article First, Section 8 of the Connecticut Constitution, and intentional and negligent infliction of emotional distress under the common law of Connecticut. See Complaint, Ex. 1 to Notice of Removal (Doc. No. 1). This action stems from the interaction between Officer Tesla and Davidson when she responded to the scene of a traffic accident involving Davidson's vehicle. Id. The defendants move for summary judgment on all of Davidson's claims.

## I. FACTS[1]

On May 23, 2003, Davidson drove his wife to the Dairy Queen on the corner of Barnum Avenue and Randolph Street in Stratford, Connecticut. Davidson parked on Randolph Street while his wife went across the street to buy ice cream cones. While he was waiting, a car backed out of the Dairy Queen parking lot and crossed two lanes of traffic before hitting Davidson's car. The driver of the vehicle which struck Davidson got out of the car and went to the Dairy Queen to call the police.

Officer Tesla of the Stratford Police Department responded to the call. She parked on Randolph Street near the scene of the accident and sat in her car for about five minutes before getting out. While Officer Tesla was in the car, Davidson approached her with his license, registration and proof of insurance, and she instructed him, in a "very nasty, short manner" to "get on the sidewalk." Davidson Depo. at 18, Att. to Def.'s Mem. in Supp. of Mot. for Summ. Judgment (Doc. No. 26). Davidson returned to the sidewalk and stood by his car, several feet from the other driver. Meanwhile, his wife returned with the ice cream and sat on the passenger side of the car.

After she left her car, Officer Tesla collected licenses, registrations, and insurance cards from both drivers. She had a short conversation with Justin Iverson, the driver of the other car, who admitted that the accident was his fault. She issued him a verbal warning for violation of Connecticut General Statute § 14-243(b) for unsafe backing. Davidson did not overhear any of the conversation with Iverson. Iverson then

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support his allegations.

left the scene.

Officer Tesla next spoke to Davidson and told him she was giving him a verbal warning for being parked too close to a fire hydrant. Davidson asked her how far he had to be from the fire hydrant and pointed out that the fire hydrant had nothing to do with the accident. Officer Tesla responded in an arrogant tone that she did not know how far he had to be, and that she would have to check the statute. Davidson then informed Officer Tesla that he was a sector sergeant with the Bridgeport Police Department and told her that she did not know what she was doing. See Def.'s 56(a)(1) Stat. in Supp. of Mot. for Summ. Judg. ("Def.'s 56(a)(1) Stat.") at ¶ 27. Officer Tesla responded in a nasty and short manner that she did not know what a sector sergeant was and did not care.

Davidson then asked Officer Tesla to call a supervisor to the scene. She told him she would not call a supervisor because the Department was very busy. Davidson told her that he felt she was not behaving in a professional manner towards him. Officer Tesla explained that two Stratford Officers had been involved in car accidents prior to her reporting to the scene, one involving a friend of hers who was currently in the hospital.

Davidson's wife got out of the car and asked Officer Tesla why she was giving her husband a verbal warning. Officer Tesla told her not to worry, that the verbal warning would not interfere with the insurance company paying for the damages. Officer Tesla then returned to her vehicle; Davidson attempted to call her back as she walked away. Officer Tesla got in her car, drove some distance away, turned around and came back to the scene of the accident. She got out of the car, paced off the

3

distance between the rear bumper of Davidson's car and the fire hydrant and "with a little smile on her face," said "Fifteen, fourteen feet. The warning still stands." Def.'s 56(a)(1) Stat. at ¶ 41. Davidson knew that the relevant Connecticut Statute prohibits parking within ten feet of a fire hydrant, but he did not share that information with Officer Tesla.

Davidson and his wife drove directly to the Stratford Police Department to file a complaint about Officer Tesla's conduct and the verbal warning. Within minutes of leaving the scene, Officer Tesla called the Department and told the desk sergeant what had happened at the scene of the accident and that Davidson had been unsatisfied with her investigation. She told him about the dispute about the fire hydrant, and he informed her that the relevant statute prohibited parking within ten feet of a hydrant. She told him that Davidson had not been in violation of the statute.

The same desk sergeant spoke to Davidson and his wife when they arrived at the station. He told them the department had been "very, very, busy that night." Def.'s 56(a)(1) Stat. at ¶ 46. He told them the verbal warning Officer Tesla had given Davidson was rescinded, and that they would get a copy of the police incident report. The desk sergeant explained to Davidson that if he wanted to file a citizen's complaint against Officer Tesla, he would first have to contact her supervising officer and then file a written complaint. Davidson chose not to file a complaint.

## II. STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134.  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III. DISCUSSION

### A. Davidson's Equal Protection Claim[2] (Count One)

Davison argues that by wrongfully issuing him a verbal warning and treating him in an "angry, hostile, aggressive and belligerent" way, Officer Tesla violated his Constitutional right to equal protection under the law.  Pl.'s Mem. in Opp. to Summ. Judg. ("Pl.'s Mem.") at 10.  It is unclear under what theory of equal protection –

---

[2] In his Complaint, Davidson asserted claims for violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights.  See Complaint.  Defendants moved for summary judgment as to all of Davidson's claims.  See Mot. for Summ. Judg. at 1 (Doc. No. 26).  In his Opposition to Summary Judgment, Davidson only defends his Equal Protection claim.  See Pl.'s Mem. at 9-14.  Therefore, Davidson has abandoned his other Constitutional claims and summary judgment as to those claims is granted.

5

selective enforcement, "class of one," or the intentionally discriminatory application of a facially neutral law -- Davidson asserts his claim. See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004)(acknowledging difference between selective prosecution equal protection claim and Olech-based equal protection claim)(citing African Trade & Info. Ctr. v. Abromaitis, 294 F.3d 355, 363-4 (2d Cir. 2002)); Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001)(explaining difference between selective enforcement claims and other equal protection claims alleging intentional discrimination). On the one hand, Davidson asserts that Officer Tesla treated him differently than Iverson "because he is an African-American," which is a selective enforcement claim. Pl.'s Mem. at 10. He also states the standard for bringing an equal protection claim under the so-called "class of one" analysis. Id. at 10-11, citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Finally, he argues that there is a disputed issue of material fact as to whether Officer Tesla violated his rights by intentionally discriminating against him in the application of a facially neutral law. See Id. at 11, citing Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001).

The court concludes that Davidson's equal protection claim cannot stand under any theory of equal protection because Davidson's claims fail to rise to the level of a cognizable constitutional injury as a matter of law. See Diesel v. Town of Lewisboro, 232 F.3d 92, 104 (2d Cir. 2000)(finding no cognizable constitutional injury where alleged constitutional injuries included "ostracism, the alienation of friendships, and the withholding of preferential treatment by fellow police"). First, Davidson claims that Officer Tesla violated his right to equal protection by "wrongfully issuing him a verbal warning." Pl.'s Mem. at 10. However, the undisputed facts show that, while Officer

Tesla indicated that she would issue a verbal warning to Davidson, she rescinded the warning. See Def.'s 56(a)(1) Stat. at ¶¶ 47-49. Furthermore, it is clear that the desk sergeant informed Davidson that he had not received a verbal warning when he arrived at the station minutes after leaving the scene of the accident. See id. at ¶¶ 44 and 50. While traveling to the police station was certainly a regrettable inconvenience, Davidson points to no case law that would support a conclusion that the issuance of a verbal warning that was rescinded before it was memorialized in an accident report or any other official documentation is a cognizable constitutional injury. See Pl.'s Mem. An equal protection claim cannot stand where the plaintiff has not actually been subject to government action. See e.g. Pyke v. Cuomo, 258 F.3d 107, 109 (2d Cir. 2001)("a plaintiff alleging a claim of selective prosecution in violation of the Equal Protection Clause must plead and establish the existence of similarly situated individuals who were not prosecuted; that is because courts grant special deference to the executive branch in the performance of the "core" executive function of deciding whether to prosecute.")

Davidson's complaint that Officer Tesla behaved towards him in an "angry, hostile, aggressive and belligerent" manner similarly fails to establish a cognizable constitutional injury as a matter of law. Pl.'s Mem. at 10. As the Second Circuit stated in Diesel v. Town of Lewisboro, 232 F.3d 92, 104 (2d Cir. 2000), "the law is ineffective to compel friendship or courtesy." While Officer Tesla's attitude towards Davidson may have been appropriately brought to the department's attention via a civilian complaint, Davidson does not have a constitutional right to have a police officer speak to him in a manner he likes.

7

### B. Davidson's Section 1983 claim against the Town of Stratford and Chief Imbro[3] (Count Two)

Davidson asserts that defendants Town of Stratford and Police Chief Michael Imbro are liable for Officer Tesla's constitutional violations because they failed "to implement policy which would prevent violation of the Plaintiff's constitutional rights." Pl.'s Mem. at 19. Having concluded that Officer Tesla did not violate Davidson's constitutional rights, summary judgment as to Davidson's section 1983 claim against the Town and Chief Imbro is granted. See Smith v. Edwards, 175 F.3d 99, 107 (2d Cir. 1999)(granting summary judgment to town when no constitutional violation was found)(citing Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978)).

### C. State Law Claims (Counts One, Three and Four)

Davidson asserts claims against Officer Tesla for violation of Article First, Section 8 of the Connecticut Constitution, and for negligent and intentional infliction of emotional distress under the common law of Connecticut. See Complaint Counts One, Three and Four. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has

---

[3] Both parties agree that Davidson's Count Two states a claim against Chief Imbro. See Def.'s Mem. at 21 and Pl.'s Mem. at 19. The complaint states that the Town had a custom or policy of "condoning and encouraging civil rights violations" that was "concurred or acquiesced by [sic] its superintendents of police, acting as agent for the defendant, Town of Stratford." See Complaint at Count Two, ¶¶ 1 and 2, Att. A to Notice of Removal (Doc. No. 1). It is not clear to the court that this language states a claim against Chief Imbro but, because of the parties' agreement, the court will assume that the allegations in Count Two are stated against Chief Imbro as well as the Town of Stratford.

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, 38 U.S. 715, 726 (1966).

While dismissal of the state claims is not absolutely mandatory, Rosado v. Wyman, 397 U.S. 397, 403-05 (1970); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial. Gibbs, 383 U.S. at 726. When "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n. 7; see also DiLaura v. Power Authority of New York, 982 F.2d 73, 80 (2d Cir. 1992); Baylis v. Marriott Corp., 843 F.2d 648, 664-65 (2d Cir. 1988); Indep. Bankers Ass'n v. Marine Midland Bank, 757 F.2d 453, 464 (2d Cir. 1985).

Because this court has granted summary judgment as to all of Davidson's federal law claims, it declines to exercise pendent jurisdiction over his remaining state law claims. Davidson's state law claims are therefore dismissed without prejudice.

## IV. CONCLUSION

For the forgoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 26) is GRANTED as to the Federal claims in Counts One and Two and DENIED as moot as to the state law claims in Counts One, Three, and Four. The clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 12th day of February, 2008.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge